## PETITION BY MUNICIPAL CORPORATION FOR LOCATION OF COUNTY DITCH.

[Common Pleas Court of Van Wert County.]

H. V. COOPER AND E. B. CORATHERS v. THE COMMISSIONERS OF VAN WERT COUNTY ET AL.*

Decided, July 12, 1905.

*County Ditch—Petition for Construction of—Where Presented by Municipal Corporation—Enlarging of Water-course not Authorized—Requirements as to the Bond—Sections 4483 and 4451.*

1. Section 4483, Bates' Revised Statutes, does not authorize the deepening, widening or straightening of a water-course by the county commissioners, upon petition of a mayor acting under resolution, in that behalf, of a municipal corporation.
2. The bond to be filed under Section 4483, to support a petition for a ditch improvement, must follow the requirements of Section 4451, and confers no jurisdiction upon the county commissioners unless signed by at least two sufficient sureties.

KILLITS, J.

In May, 1904, the acting mayor of the city of Van Wert filed a petition with the Auditor of Van Wert County, praying the county commissioners to deepen, widen and straighten a certain county ditch, locally known as Town creek, along a route thereof wholly within the limits of the city, and accompanied the petition by a bond signed by the city of Van Wert, through its mayor, the bond being without any other surety. These acts of the acting mayor were pursuant to a resolution of the city council authorizing and directing the same to be done by him, the council assuming to act under the provisions of Section 4483, Revised Statutes. The commissioners, acting

---

*This case was taken to the circuit court on appeal, and, April 13, 1906, that court found the proceedings before the commissioners to be void for want of sureties on the bond. The holding of the court of common pleas, as to the scope of improvements possible under Section 4483, was neither considered nor criticised by the circuit court.

solely upon this petition and bond, found for the improvement, but changed both termini so as to include many miles of the ditch both above and below the city, and ordered a survey upon the route as so changed. No further or different application for the improvement or bond were filed than those referred to above. A very large expense was incurred for surveys, and in April last the commissioners confirmed the engineer's apportionment, and on the 31st of May ordered that the construction of the improvement be sold. The next day the plaintiffs Cooper and Corathers, who are respectively owners of farm lands without the city limits, beyond the scope of the improvement originally prayed for, but which are apportioned and to be assessed for the cost of location and construction, filed their petition in this court to enjoin the construction of the improvement and the burdening of their respective lands with any of the costs thereof.

The cause is now before the court upon the issues made in the pleadings, and the admissions of fact therein made, and made at the final hearing, which will be referred to as we proceed, so far as they are necessary to an understading of the decision. Three grounds of relief are urged in behalf of the plaintiffs, namely:

1. That the stream to be improved is a natural water-course, namely, a natural creek, and that the commissioners have no right, under a petition to improve a specified portion of such creek, to extend the termini, citing *Abel* v. *Commissioners*, 9 Ohio Decisions, 339; 6 Nisi Prius, 349.

2. That no proper bond was filed as required by Section 4451, the bond being without sureties.

3. That Section 4483 confers no authority upon councils of municipalities to direct and empower the mayor to file a petition and bond in the name of the corporation for the *deepening, widening* and *straightening* of a ditch.

The first contention is disposed of adversely to the plaintiffs by the admission of fact that many years ago a county ditch was laid along the general route of Town creek, and that the

proposed improvement, as well as that embraced in the mayor's petition, deals with the artificial channel made for this stream when it was so improved as a county ditch. Upon the construction to be given the language of Section 4483, in connection with that of the chapter in which it is found, depends the determination of the remaining contentions of plaintffs, and at the outset we are found deprived of one very efficient aid to interpretation in doubtful cases in the fact that this section is the work of the codifying commission alone, finding a place in the statutes for the first time in the revision of 1880, and that its provisions never received legislative sanction, so far as we can discover, except as the work of the commission was adopted by the omnibus act of 1879, enacting the laws as codified and revised. Hence, except for the general title of the chapter, we have neither title nor legislative history to which to refer for assistance.

Passing, for the time, the technical objection that the bond was deficient, for a discussion of the larger question involved in the third proposition of plaintiffs, we will now consider whether authority to use the name of the municipality to invoke the jurisdiction of the commissioners to "deepen, widen and straighten" a county ditch is granted by Section 4483. So much of the section as needs interpretation in this behalf reads as follows: "The council of a municipal corporation may, by resolution, authorize the mayor to present a petition, signed by him officially, and a bond, to the county commissioners, to *locate and construct* a ditch described in the resolution," etc. Unless this part of the section is broad enough to warrant the action of the council and the acting mayor in asking the commissioners to "deepen, widen and straighten" Town creek, being a county ditch already located and constructed, the proceedings of the commissioners are void, the plaintiffs are entitled to a decree, for it is not seriously claimed that anywhere else exists authority to the council and mayor to go to the commissioners in the name of the village for such purpose.

Five canons of interpretation are to govern us in the decision of this question:

First.   That opportunity for construction of a statute by a court exists only when the language to be considered is vague and ambiguous.  If it is plain, it should be construed as it reads, and no notion of the court as to the want of wisdom of its provisions and the desirability to give a meaning to the language to make the statute, in the opinion of the court, more beneficial in its operation, should prevail to change the plain reading.  *Slinguff* v. *Weaver*, 66 Ohio State, 621, 626.

Second.   That the rule of strict construction should be employed, this being a statute dealing with the delegation of powers in derogation of the rights of individuals; conferring powers upon inferior bodies which have none save such as are expressly conferred.  *Zanesville* v. *Richards*, 5 Ohio State, 589; *Mays* v. *Cincinnati*, 1 Ohio State, 269-273; *Pleasant Hill Village* v. *Commissioners*, 71 Ohio State, 138.

Third.   That the statute must be construed in connection with all others with which it is *in pari materia*, and especially in connection with the system of legislation of which it is a part.  *Cincinnati* v. *Connor*, 55 Ohio State, 82-89; *Cincinnati* v. *Guckenberger*, 60 Ohio State, 353.

Fourth.   That, unless the words to be construed have a legal significance differing manifestly from their ordinarily accepted meaning, the latter shall prevail.  *Allen* v. *Little*, 5 Ohio, 65-71; *State* v. *Peck*, 25 O. S., 28; *Mogle* v. *Black*, 5 Circuit Court Reports, 54; s. c., 3 C. D., 25, 28.

Fifth.   If the particular words and phrases under construction have acquired a fixed legal significance, particularly by statutory usage, such limited meaning and acceptation it is presumed the legislature intended for them.  *Turney* v. *Yeoman*, 14 Ohio, 208, 218; *Grogan* v. *Garrison*, 27 Ohio State, 50; *Rhodes* v. *Weldy*, 46 Ohio State, 234.

So well settled are each of these principles, that it were almost supererogatory to cite authorities, certainly so to quote from them.  Applying these criteria it is manifest that this statute must be taken just as it is found, using its language as narrowly as it reads, to the exclusion of authority to the

council to empower and direct the mayor to employ the name of the city in a petition to widen and deepen and straighten this county ditch. It is argued that the words of the statute, "locate and construct a ditch," are so comprehensive as to include anything else to be done less than construction, on the principle that the greater includes the less. The difficulty, however, is not only that these words have an ordinary meaning, in almost exclusive acceptation, distinct from the thought in the words, "widen, deepen and straighten," but in the chapter relating to county ditches, of which Section 4483 is a part, these identical words are used in a legal sense differing from the words "widen, deepen and straighten," as used in the ditch petition in this case. Section 4447 reads, "The commissioners may cause to be located, and constructed, straightened, widened, altered, deepened, boxed, or tiled, any ditch," etc., and we must presume that these various terms were used to describe improvements respectively differing in character to the extent that terms of different meanings were necessary to be used to describe the jurisdiction conferred upon the commissioners. In *Bloom* v. *Richards*, 2 Ohio State, 388, 402, Judge Thurman said:

"It is a general presumption that every word in a statute was inserted for some purpose. Mere idle and useless repetitions of meaning are not to be supposed, if it can be fairly avoided."

This observation has been so generally approved by subsequent decisions as to have become a cardinal principle of interpretation, with controlling application to the construction of Section 4447. Hence, we can not assume that the words "located and constructed" have either the same meaning with "straightened, widened and deepened," or that the former include the latter. If a limited meaning is to be given to "located and constructed" in Section 4447, the same must be given to "locate and construct" in Section 4483.

Point to this conclusion is found in a consideration of the legislative history of the two sections, 4447 and 4483. The

latter, as we have seen, is wholly the work of the revisers; curiously enough, the addition of the words "straightened, widened and deepened" was first made to what is now 4447 by the same revisers. Up to the time of the revision no act conferring jurisdiction upon the commissioners over ditches used the terms we have quoted. The acts of 1859 (S. & C., 523) and 1871 (68 Ohio Laws, 60), the parent statutes to 4447, conferred upon the commissioners power to "locate and construct" simply. Thus it appears that the same legislative hand which provided for us Section 4483, placed upon the same terms there used an exclusive and limited meaning in Section 4447, a law which is inseparably connected with 4483. The two sections, in this particular, and in effect are part of the same act. Judge Owen, in the syllabus to *Rhodes* v. *Weldy*, 46 Ohio State, 234, says:

"Where the same word or phrase is used more than once in the same act in relation to the same subject matter, and looking to the same general purpose, if in one connection its meaning is clear and in another it is otherwise doubtful or obscure, it is in the latter case to receive the same construction as in the former, unless there is something in the connection in which it is employed plainly calling for a different construction."

As we have said, the meaning of the language of 4483, in the particular under consideration, is neither "doubtful or obscure," but is, on the contrary, clear and plain; nor is there anything in the circumstances calling for a different construction. In argument counsel for defendants referred us to Section 7 of the Municipal Code (see 1536-100, paragraph 19, Bates' Revised Statutes), whose provisions, in our judgment, plainly suggest that there is no reason why the authority the defendants ask for in this case should be read into 4483. This section of the code provides authority to the city of Van Wert to do itself all, and even more, with Town creek, than was embraced in its petition to the commissioners, involved in this case. It is there provided that the city may

"enlarge, deepen, straighten, any water-course located in whole or in part within the corporation or lying contiguous or adjacent thereto." By Section 10 of the code (see 1536-103, paragraph 9, Bates' Revised Statutes), the city may appropriate property outside of the city for outlet, and by other sections the power of assessment is given to the corporation. The language used by the Supreme Court, in deciding *Village of Pleasant Hill* v. *Commissioners*, 71 Ohio State, 133, suggests that that court would give to Section 4483, if it were directly before it, the same construction we have. For these reasons we conclude that the petition of the acting mayor, upon which alone the commissioners acted, was filed without authority of law, and that all proceedings thereon by the defendant commissioners are void for want of jurisdiction.

While unnecessary to the decision of this case, we will consider briefly the contention made that the bond was insufficient to confer jurisdiction. Against this claim two arguments are advanced: one, that it absurd to require sureties on the bond of the city, as the entire taxable valuation of the corporation is behind it; and, second, that the bond having been acted upon as approved and sufficient, it can not now be attacked to destroy jurisdiction, citing 44 Ohio State, 637, and 19 Ohio State, 296, and other cases involving fiduciary bonds; and *Schenck* v. *Cobb*. 8 North Eastern, 271, wherein the Supreme Court of Indiana held that a ditch bond with but one surety, although the statute required two, was not fatal to jurisdiction, having been approved by the county auditor, because of the provisions of a curative act which the court held to apply in such cases.

As to the first argument, the absurdity, in this particular case, of requiring sureties, is apparent, but no more so than if the Bank of England, or any other enormously rich private corporation or individual owning land in Van Wert county, should have been the petitioner; in which case surely, even for the minimum amount, a bond "with at least two sufficient sureties," as required by Section 4451, would be indispensable.

Again, the word "bond," in Section 4483, does not require a different interpretation as used there from that applied to it in 4451, and it must not be overlooked that Section 4483 further provides that "in such case the commissioners shall count the municipal corporation as an individual petitioner." If it is to be so counted, then it must be so treated with respect to the bond, however absurd that may appear. As we have seen, the court's notions as to the absurdity of a statutory provision ought not to weigh against its plain meaning.

As to the second argument, it is sufficient to say that we have no such curative statute as, in Indiana, makes the decision of the court, in *Schenck* v. *Cobb*, possible, and that a clear distinction is to be drawn between bonds for the qualification of fiduciary officers and those required by statute to underlie the jurisdiction of inferior bodies attempting to exercise the powers of eminent domain. In the latter case, the filing of a proper bond is essential to jurisdiction. *Sessions* v. *Crunkilton*, 20 Ohio State, 349.

No want of diligence is chargeable to plaintiffs, for they began this action as soon as it was determined by defendants that their lands should be charged for location and construction, and we are therefore constrained, although reluctantly, in view of the costs made, to order decree with costs in favor of plaintiffs, avoiding the proceedings of the defendant commissioners upon the alleged petition of the city.

*Blachley, Priddy & Kerns*, for plaintiffs.

*Harry Conn*, Prosecuting Attorney, and *Horace G. Richie*, for defendants.